We'll hear argument first this morning in Case No. 20-1800, Shurtleff v. Boston, Massachusetts. Mr. Staver. Mr. Chief Justice, and may it please the Court. After 12 years with 284 flag-raising approvals, no denials, and usually no review, one word caught the attention of a Boston official, the word Christian on the application. The flag itself was not the problem. Had it been called anything but Christian, the same flag would have flown for an hour without incident. The policy does not limit the flagpoles to subject matters or speakers. All applicants are welcome, except religious viewpoints. The 2018 codification places religion in the same category as speech deemed inappropriate, offensive, supporting prejudice, or discrimination. To support its admitted viewpoint discrimination, the City raises one defense, that the public forum open for all applicants is really government speech. This Court warned in Mattall that the government speech doctrine is susceptible to dangerous misuse. This is such a case. The City's flag-raising forum is not government speech under Walker and Sumim. The City, by an unbroken history and practice and policy, expressly declared that the flagpoles are one of its public forums open to all applicants. In doing so, the City long ago crossed the line from government speech to private speech. A reasonable observer would understand this history and the policy. This observer would also see a private event coinciding with a temporary flag-raising event. The City exercised no control over the message, the design, and did not own the flags. The City never requested flags or messages to be changed and usually did not review them. The City's application alone cannot transform private speech into government speech. In light of the practice and policy, the decision below upholding viewpoint discrimination under the guise of government speech is dangerous and should be reversed. I welcome the Court's questions. Mr. Staver, you begin your brief by arguing that this is a limited public forum or a designated public forum. Do we have to agree with that in order for you to win? No, Your Honor. Chief Justice Thomas, this is viewpoint discrimination under any one of the public forum doctrine, even in a non-public forum. If this is it, it's clearly viewpoint discrimination. So this Court does not need to address the category or the kind of public forum at issue. Viewpoint discrimination is impermissible in every category. Well, that can't be right because if it's a government forum, this is government speech, they can certainly discriminate on the basis of viewpoint, right? That's correct if it's government speech. But this is not government speech. It's nothing like Walker, which is the outer bounds of the government speech doctrine. It's nothing like Summum. The city exercised no control. For 12 years, the city ministerially approved all of these applications with virtually no review. The policy that they adopted in the middle of this, I guess, saying that they won't fly flags supporting discrimination, prejudice, or religious movements. What if it just said supporting discrimination or prejudice? Could they do that? I think that would still be viewpoint discrimination. Offense, for example, which that would be what it is, is in fact viewpoint discrimination, as this Court has already held in the past. Well, they can't have an official view against discrimination or against prejudice? They have a view in terms of whether or not the public is allowed to attend a particular event. But this particular policy not only covers the flagpoles, but it also covers the public forums that are out there in front of City Hall, the designated public forums that are clearly admitted. The city could not prohibit discrimination or discriminatory speech within those designated public forums. For 12 years, you had a unified policy. Mr. Stavridis, just to follow up on the Chief Justice's question, and this is not this case, but it's an important question because we have to set lines and we're giving instruction to cities about how they can create their own policies. And suppose a city thinks two things. It thinks, we like this idea of having our flagpole be a public forum and having a wide variety of organizations use it to identify themselves and to express messages. So we sort of like this sort of civic organization kind of activity. But at the same time, we think that there are limits. So the city has a policy of that kind and then somebody comes to it and says, we'd like to put up this swastika on your pole. Does the city really have to say yes at that point? If it's a designated public forum, I think the answer is yes. So really what you're saying is that a city can't possibly have a kind of open policy like this because no city is going to want to put up a swastika or a KKK flag or something like that. So really what you're saying is that this is just a kind of policy that a city can't have. No, Justice Kagan, in fact, the city could have a more limited policy. It didn't choose to do that. Now, the city's brief tries to indicate certain limitations on categories of subject matters, but that's nowhere to be found in the 12 year or 13 year policy. And it's not in the 2018 codification of that policy anyway. That is not limited to subject matters or speaker identity. If the city wants to open up a forum but limit it to certain kinds of subject matters or speakers, certainly the city is capable of doing so. Can the city allow patriotic flags or messages of support and not those that are anti-American, for example, to pick up on Justice Kagan's question, someone wants to fly the Al Qaeda flag at City Hall in Boston? You're saying they would have a right to do so. The city, for example, in the solicitor general's brief, goes into that with regards to what the public parks do in the federal public parks in terms of being able to not only use those parks for a wide variety of expressive activities, but for their own specific speech as well. Certainly, the city could have a limitation on the subject matters or speakers. For example, the city could limit all the flags to simply flags of other countries recognizing the various constituencies of their communities. But the city has chosen not to do that. Sayer, what if the city said, along the lines of what Justice Kagan proposed, we want to endorse certain messages. We like this idea of civic expression at the flagpole, but we want to exercise more control. And Boston has said it's going to do that if it loses this case. Couldn't Boston, or I guess I should ask you, do you agree that Boston could accomplish that by making the exact same run of flags that it's had up to this point, government speech, by exercising more control and maybe putting a Boston official next to the flagpole when it's raised up to show that this is the city speaking? Isn't that another way to do it other than just designated as a limited public forum for these categories or subject matters? Justice Barrett, that would be a closer call. But in fact, if the city just simply wanted to use government speech as a guise for censorship, as I believe happened in this particular case. Well, I'm not saying this case and saying, can't the government choose what it wants to say? And if the government makes it clear and it's not just stamping government speech on it to hide discrimination against private viewpoints, but if the government truly exercises control, wouldn't that be OK? If the government truly exercised control and in fact, the brief of the local governments show that Boston is an outlier by many respects. Other cities don't open for third party flags for obvious reasons. Those that do can invite some third party participation as long as they maintain very specific control of the subject matters and messages and that it's very clear that it is their speech. I have a question about the record. You mentioned in your reply brief this metro credit union flag, but that doesn't appear on the list in the city's brief. And I just wonder, is there some dispute about that? No, there's no dispute. The list that's in the appendix was the list from 2005 to 2017. The metro credit union is 2018. During that year, there were 50 private third party applications and metro credit union was one of those that didn't celebrate any kind of historic event. It wasn't national. It wasn't constituency or ethnicity related. It was just simply a private credit union that's frankly across the street from where the city hall is. So contrary to what the city says, there's no evidence they say that anyone just had a random day. That, in fact, is one of those random days. It's not consistent with the city's now invented categories of national flags and other community recognition. So what are we supposed to do about that? I mean, you saw in the brief what is the brief of various religious groups, dark greens. If you really look over that 12 year period, we've been getting our sample from 2005 to 2017. There weren't 284 different flags. There were 50 different flags. And moreover, because some ran twice or three times, I guess this is of those 50 different flags, 45 percent, 90 percent of them, which means 45, I guess, were like national flags or regional flags. And then of the remaining five, we had one for Columbus Day, one for Veterans Day, one for Bunker Hill Day, and the other two might have been great gay pride and something like that. And of course, we didn't go through all this control. There wasn't any need to. I mean, sure, those flags are right. That doesn't show they're going to have every conceivable group, including the KKK and so forth. So what do we do about the record in that? Because that isn't really in the record. I don't think what I just read you is it? Maybe it is. And then the other question that I related that I would have is go to Boston, go look at the city plaza. And you see three flagpoles and there are flags. And they're right in front of the city hall. And two of them, one the state, one the national, federal, national flag. And the third one, I mean, what are you going to think? Of course you think it has something to do with the city, something. So they're saying, look, on the one hand, anybody in his right mind think it does have something to do with the city. And number two, there isn't some huge diversity for any group in sight. All there is, is the flag, the flag of Paraguay and a couple of exceptions for groups that we support. Justice Breyer, on your last point, taking that first in the petition appendix on page 142 and then also on 145 to 146, there was a second flag and that's why they use the word flagpoles. The one that was at issue here was the flagpole near the other three in front of City Hall. The second flagpole is part of their public forum as well. And it's on Congress Street, parallel to the city. And in fact, it's the Bunker Hill flag, the picture in the appendix that's actually raised on that Congress Street flagpole. And this is the back of the city hall, isn't it? The background might be the city hall, depends upon which way you take the photograph. But it's not in front of the city and it's not near any other government flags. It stands alone by itself. And as it relates to whether or not certain groups have historically taken advantage of this forum, doesn't mean that the forum is ever limited. In fact, the 2018 policy had the advantage of Mattel, Walker, Sumim and our litigation and nevertheless decided not to close or limit the subject matters or speakers. I guess, though, that one of the points that Justice Breyer was making is if you're on the street in Boston and looking over to City Hall and see these three flagpoles and now you say there's maybe a fourth, but the three are sort of together. You know, why would you think that this is anything other than government than the government flying a flag? I think when you look at that, Justice Kagan, you're going to see one that's clearly government speech, as Justice Barrett was referring to in terms of limiting. And you have the United States flag always up and underneath it is always the POW MIA flag. It's always there. It's clearly the government's right. And then there's the Commonwealth flag. And then there is this third flagpole. And and you've been you've walked the street many times and mostly you see in the city of Boston's flag on it. But occasionally you see another flag on it. Why wouldn't you think that this is the city of Boston deciding to put up a substitute flag for its own purposes? Because an informed observer would understand the history, the policy and also see the. Well, that is very, very informed. I mean, that is not your typical person who walks the street in Boston. And, you know, all they know is I've seen the city of Boston flag here a thousand times and now I see another flag must be the city of Boston decided to do something else today. Well, the city, the observer would also see the private event that's coinciding at the same time as the private flag raising, because the private event gathering down there by the base of the flag would happen, as in this case was designed to do. Camp Constitution was going to gather around the base while for one hour having an event that would temporarily raise the flag and bring it down. The reason that is, is it true that one of the flags that has been displayed on this third flagpole is the flag of the People's Republic of China? Yes, Justice Alito, in fact, that was where the Cuban flag was was displayed. Correct. So, I mean, it might be shocking to somebody walking down the street if they didn't know the background to see some of these national flags flying, wouldn't it? Certainly. And then if you look, for example, is that a really certainly because they're all the time national flags flying on 16th Street, it just signifies that somebody's come to town. So it's like, you know, the Chinese premiere is here. There's a second reason why it would be that way, because all the time when you had the People's Republic of China by a private organization, the Chinese Progressive Association, flying roughly September, October every year, you always have Mr. Chen, a private individual, protesting that flag by raising the Taiwanese flag, supporting the pre-Mao rather than the post-Mao revolution. So certainly Boston is not one. So I thought and I may be mistaken, but in one of the briefs they suggested that your client, the petitioner, actually complained to the city about flying the Chinese flag at one point. That's not in the record, but there was a YouTube video that he took of the raising of the flag and he put it up on YouTube. And it was a complaint about the city doing this, correct? No, not about the city doing it, about the fact that it's the Chinese communist flag, not the city because of how Shurtleff knew that. I think we're missing an essential point. I believe that I think Justice Kagan and Justice Breyer are discussing, which is to an ordinary observer walking past City Hall, if you see a flag on the pole, you think it's City Hall speaking. You're asking us now to import a fiction that this ordinary speaker is going to also look at the event that's occurring and understand that the flag is related only to the event and not an event sponsored by the city. Is that correct? Not necessarily. I don't think that the ordinary observer can just be limited to a few seconds or minutes snapshot and discount everything else that's going on before it or that actually is taking place at the same time with the private event taking place. In this case, for example, whether you have the Chinese Progressive Association, People's Republic flag or the other one, the Taiwanese, the Republic of China flag. I see that I'm going to finish your thought. You're going to have a private event that is happening at the same time. That private event can notify any observer, whether they're familiar or not with the past or the policy, that a private event of a flag raising is taking place. Thank you. I have just one more question. Your friends from the city say that even if judgment should not have been entered in their favor, it shouldn't be entered in your favor either. But the case should be remanded because there are factual issues, particularly concerning whether or not this is a government forum. They say, you know, the mayor was there sometimes that other government officials participated. Do you dispute that? Yes, Mr. Chief Justice, because this has gone on for a number of years of litigation. There is a stipulated set of facts on page 132 of the petition appendix. There's a stipulation that the flagpoles are included in their designated properties. There's also stipulation as to why they took it down because of the Christian word on the application, the Christian viewpoint. There is no reason to send this back for additional factors to be developed. The city had all the plenty of opportunity to be able to develop that record. And this is the record that we have. Thank you. Thank you. Thank you, Justice Thomas and Justice Breyer. Yeah, I mean, oddly enough, I'm sure this is a useless question, but you would have thought after reading the S.P.'s brief, if they really want to have government speech, it's not too hard for them to arrange it. And they didn't pay too much attention in the past, like zero. And can't it be settled? I mean, you would have thought what's past is past. Let's look to the future, see what Boston wants. You might not disagree. I don't know. Justice Breyer just cried out with an empty record sort of her. Well, Justice Breyer, I don't believe the record is empty. No, no. But I mean, you see where could it be settled? We thought that this was, in our view, straightforward case from the very beginning. The city drafted its own policy and the city used the word public forums. The city said it's open to all applicants. The city acted that way for 12 years. In fact, 13 years codified the policy and continued the practice up until October 2021. We thought it was straightforward, but obviously the city, under the guise of government speech, condoned by the First Circuit, has ultimately engaged in admitted viewpoint discrimination justified by government speech. Justice Alito, Justice Sotomayor, Justice Kagan. If I could just say one small thing, which is I had the same reaction as Justice Breyer had, but you've answered his question. I just want to say now that Mr. Hallward-Driemeier should also think about that question. Why hasn't this case been settled? All right. That's all I have. Justice Gorsuch, Justice Kavanaugh. Thank you, counsel. Thank you. Mr. Joshi. Thank you, Mr. Chief Justice, and may it please the court. Like any private property owner, the government is entitled to use its own property for whatever lawful purpose it likes, including for expressive purposes. And when the government expresses its own viewpoint, it is never compelled to express competing or alternative viewpoints. Government could not function were that the rule. And, of course, when the government expresses its own viewpoint, it is free to solicit input from and assistance from and even other messages from third parties in helping the government to shape its own message. But this court has said that unlike a private property owner or a private speaker, when the government chooses to open up its own property for use by third parties to express their messages, the government cannot restrict access based on viewpoint, including religious viewpoints. Now, I admit and this court has recognized that it can be a really fine line between the government soliciting messages from third parties to help shape its own message on the one hand and serving as a conduit for the third parties to express their own messages on the other. But the record in this case viewed in the light most favorable to the petitioners here suggests that what Boston did, at least at the time of the denial of petitioners application was the latter and not the former. Council of what's at stake in that line between public forums and government speech on the one hand, you emphasize the government's right and entitlement to edit speech of its own. But what happens when that doctrine goes too far? Why is the government think that this properly belongs on the other side of the line? So, as I said, I think the ultimately the question is always going to be who is speaking. And as this court told us in in Mital against Tam, the fear is that the government could simply by putting its stamp of approval, as Justice Barrett mentioned in her questioning on private speech, it could favor certain speakers over others. And the First Amendment tells us that that's off limits to the government. But that said, I think in this particular case, as in all cases, the question is going to be highly fact bound. And it's going to depend on really the answer to the question who is speaking in this case. Every time one of those two hundred and eighty four flags went up the flagpole, was that Boston speaking each of those times or was it the third party who's flagging? Why does the government come down on that side of the line? Now, what are the factors you think that we should be using to guide us in drawing that very difficult line between these two doctrines? I think ultimately the factor is what or the the ultimate question is, what did Boston do when it created the flag raising program? And here we I think there are a number of facts in the record that would tip the scales toward believing that that Boston created a forum, even if it's a nonpublic forum. The two hundred and eighty four approvals in a row, of course, the fact that Rooney would approve these in an almost ministerial manner without ever looking at the flags, without requiring that the actual flag design be shown, is underscored by the fact that petitioners flag apparently would have passed muster, but for its description as a Christian flag in the accompanying email. The fact that flags raised in the flag raising ceremony were generally speaking at the request of a third party and not initiated by the city itself. So, Mr. Joshi, suppose you're right as to all of those things, that there was essentially no control from the city government here. And and that pushes strongly in the direction of, well, it's not government speech of government doesn't control it. But suppose, on the other hand, one thinks that reasonable observers would think that this was government speech and there might be some arguments about that, but I just want to assume it for the moment. Suppose one goes in one direction and the other goes in the other direction. How do we think about that? Well, I think first, a reasonable observer ought to be charged with knowledge of the basic contours of the program we're talking about. This court's case is dealing with forums going back to Widmar and Rosenberger and Lamb's Chapel. Some of the others Cornelius have said that the right unit of analysis is the program to which the plaintiff seeks access. It can't be a too high a level of generality. So it's the combined federal campaign, not the federal workforce in Lamb's Chapel. It's use of the school rooms after school, not during the school day. And so I think here you would have to assume that the reasonable observer is aware that there is such a thing as a flag raising program. Yeah, I mean, just so that you are called out a fiction. And I think, you know, that's an assumption that does verge on a fiction, right? The person walking by City Hall every day does not know about the contours of the flag raising program. It just knows on Monday through Thursday, I saw the city of Boston flag and now I see another flag. Surely that's just the city of Boston deciding to fly another flag instead of its own flag. So I have two related responses to it. First, I think it's just as likely that an observer might know that there exists some kind of flag raising program. And when they call into Boston to complain about the flag they see on the flagpole, they're not necessarily complaining that Boston is endorsing that flag, but rather they might be complaining that Boston has opened up its flagpole for a use that would permit such a flag to be flown. But more broadly speaking, I think it would be a little bit problematic if we allow and realize I'm speaking on behalf of the United States here. But we take this court's cases to say that the First Amendment should not allow a government to evade the strictures of the First Amendment and the prohibition on viewpoint discrimination simply by being innovative in its program or by fooling the public or by having a secret program on the side that only a few people know about. The fact is, once the government or the city of Boston here in particular is chosen to open up its flagpole for use by third parties, the First Amendment imposes certain restrictions on how it can run that program. You listed certain factors, I think three, the 284 approvals, they were approved in a ministerial fashion, the flags were flown at the request of a third party. Were there more you were going to say there? Yes, Justice Kavanaugh, another one is that these flag raisings were generally accompanied by a flag raising ceremony at the base and often by an associated event in City Hall. This court in Christian consciousness, one of the several Christian consciousness cases mentioned that separation from a traditional public forum could help make you think that it's government speech as opposed to a forum itself. It's the same application form that people use, and I think there's a pet up 148 Boston says that they process applications the same. If you go to the website today that lists the new 2018 policy, it directs you to exactly the same application you would fill out if you wanted to host an event on a conceitedly designated public forum. And of course, Boston's own desires for the program itself, which is celebrate diversity and foster connections among Boston's many communities. That makes the doctrine seem quite circular in the sense that it is a public forum because of what they've done. And it'll be easy, presumably. And why don't you tell me what you think Boston would need to do to change this from a public forum to something that's not a public forum where they could permissibly exercise control? Yes. So it's I do think to directly answer your question, it should be rather easy for the government to change things. This court expressly recognized that in Perry and in a line of cases. And what what specifically do you think they'd need to do? I as we suggest in the back of our brief, they could do a couple of things. Obviously, government property can be used both for government speech and to create a forum, even if it's a limited or a nonpublic forum. And so Boston could take a two track approach like that. Most of the time it does use the flagpole for its own flags. But if it wanted to preserve this kind of flag raising program in which third parties could raise their flags, they could limit it, as we suggest. And as Mr. Staver pointed out to flags of countries could, of course, it could limit it only with the purpose of discriminating against religious viewpoints. I don't believe that would be appropriate. This court has said that even in a nonpublic forum, viewpoint discrimination is impermissible. And we read Rosenberger, Lambs Chapel and Good News Club to suggest that prohibiting all religious viewpoints is nonetheless viewpoint based discrimination. So I don't think that would be an available. Mr. Joshi, I want to follow up on Justice Kagan's questions about what an informed observer might think about seeing this flag, because I agree with her. This really is a fiction. And this goes to Justice Souter's concurrence. And some I'm trying to figure out how much the observer, the informed observer knows. It seems to me that when you think about the three factors from our case law, control does almost all of the work because really it's the informed observer knowing about the degree of control that the government exercises, that if we're creating this fiction, makes the informed observer think or not think that the speech is actually uttered on behalf of the government. Would you agree that control is the most important factor? I think that's right. Control is the most important factor. And that's because all of the factors in Summum and Walker are just that. They're factors to determine who is speaking. And when you're asking the question who is speaking, generally the person speaking has exercised some degree of control over the message that's being conveyed. What if the city exercised complete control in this sense? It has a policy that says anybody can put up whatever message they like on a big billboard that we have in front of City Hall, except that we will review all of these messages and we will exercise complete discretion in deciding whether we will allow the message to be put up. And in exercising that discretion, the city disallows any message with which it disagrees. Now, there there's complete control. Do you think that's government speech? That's sort of difficult to answer, and I'll just give you a couple of the things that that can possibly be difficult to answer. Suppose that it was a speaker's platform in a park and they say, anybody can speak here, but you have to give us your speech in advance and we're going to exercise complete control over what you say. If we don't like your speech at all, we're going to reject it. If it's got some things we don't like, we're going to edit it. Other than that, you can say anything you want subject to our complete control. That's government speech. That's obviously not government speech and obviously forbidden. And in particular, you've got a public park where that that. Well, let's say it's in front of City Hall Park. It's on public land in front of City Hall. My point is control can't be the be all and end all because censorship involves control. Censorship. That's exactly what censorship is that you're absolutely right. I'm not going to fight you on that. But I guess what I'm saying is that one can imagine the city, if it chooses to say on its website, host articles about Boston and how great Boston is. They might not want to write all of them. They might say, submit your essays. But this is on our website and it's going to be from our viewpoint. And if we agree with your viewpoint of why Boston is great, we'll publish your article that you've submitted to us on our website. I think that looks a lot more like soliciting third party views to shape a government message. And so to the extent the billboard example would be similar, that very well might be government speech. But I think in most cases, if what the city is doing or if what the governmental body is doing is simply inviting a diversity of viewpoints, then it's no longer government speech. And then it really does look like putting a stamp of approval. I guess an analogy I would give you is the difference between, say, hosting a symposium in which you're sort of curating who's going to speak. You might be inviting a diversity of views, but within a narrow band and you're exercising a lot of control versus hosting an open mic night where you're just you have the mic available. You're serving as a conduit and third parties can come up and give their views. And I think that's the key question in this case. Was Boston hosting a symposium of flags in its communities or was it more like an open mic night? Well, that's the key question. Then how do we answer it? Look, I look at the record, you saw 173, 180 something, and it says Lithuania, Dominica, Tibet, Ireland, United Nations, Vietnamese, Poland, Haiti, dah, dah, dah, dah, dah. As I look through that, it's certainly 90 percent national flags and then they have a few others. Okay, so and then that isn't even in the record, I don't think, anyway. I think this is somebody printed it or something. And so what am I supposed to do? What I'd like to do is say, send it back and find out what they actually did. But that doesn't seem necessarily possible. I don't know. That's why I'm asking you. I really don't know. So what do I do? So I'll answer those in turn. First, I do think that list of flag raisings is in the record. And 2018, that included the metro credit union. That's also in the record. Yeah, yeah, we have one metro credit union, you have 99 of their favorite countries. I don't know if China is their favorite country up there or not, but nonetheless, they have countries and regions. 90 percent. So what? We say 90 percent, there you have 10 percent that's other things, and therefore you're not government speech. Or the opposite. At 73 percent, that would have made a difference. Is that the kind of holding you want? I don't think that would be appropriate or even relevant, Justice Breyer. I think the point is that even if even if you accept that, although it doesn't exactly match their past practice and they haven't codified it. But even if you accept that what the city wanted to fly were flags of countries and flags commemorating holidays, that doesn't necessarily mean it's government speech. It could still be a nonpublic forum in which it invites Boston's communities to raise the flags of their countries of origin. It could still be a nonpublic forum in which third parties are invited to come and celebrate holidays. And if that's what they were doing, then they would have to be viewpoint neutral. So country flags, they'd have to fly the Vatican celebratory day flags. They'd have to fly a Columbus Day flag. Thank you, counsel. One question, what about the issue that your friends on the other side say that is really still open? They say that the record will show when it's developed that the mayor came to a lot of these things or some other governmental representative said that they're often in connection with governmental proclamations. You know, the people of Italy or whatever and all that. And it's the Italian flag. Does that change your analysis about whether it's government speech or not? In other words, it's in conjunction with other governmental activities. Had that been in the record, it may well have, because that would suggest a degree of governmental control involvement, perhaps initiation. But in this particular case, first of all, I don't think that's in the current record on summary judgment. And I'm an appellate lawyer, not a trial lawyer. But my understanding is you usually can't reopen these things. But second, I will say that the city itself seems to understand the difference between when it wants to speak on the flagpole and when third parties speak pursuant to the flag raising program. And I'll just give you a couple of examples. The district judge mentioned a couple of times that the city had raised a pink transgender flag. That's not in the list of flags in the petition appendix that Boston provided to petitioners during the litigation that starts at Pet App 173A. Likewise, this is not in the record, but it's common knowledge that I think in 2014, then Mayor Walsh raised the flag of the Montreal Canadiens, a hockey team that I think had just defeated the Boston Bruins in a playoff series. That's like I can understand why it wasn't put in the record. But but that flag's not, you know, not in the list of flags either. And I think that just shows that respondents understand when they're using their flagpole to speak and when flags are being raised pursuant to this program. Justice Thomas. Justice Breyer. Justice Alito. Justice Sotomayor. Yes, counsel. In your response to the question of deciding whether control is the only factor, I think your answer to Justice Alito has to be no, because in your response, you started to focus in on forum a lot because your response was in a park. They couldn't do the kind of content or viewpoint discrimination that they might be able to do with the flagpole. Am I right about that? It's correct that a park is a traditional public forum. So the nature of the forum is important. So do you agree with your with Petitioner that forum is irrelevant in this case? And if you do, why is it irrelevant in this case? I don't think it's irrelevant, but I do think that you have to look at the program that Boston created. So it's not flags in general, although that is relevant. But I think you have to look at the particular program that the city created, which is a flag raising program in which it seemed to, from its actions, invite a diversity of views. Thank you. Justice Kagan. So, Mr. Joshi, I don't want to put words in your mouth, but if it's a program that is attempting to invite a diversity of views that believes in civic speech, civic organizations, essentially, you're saying once you have that kind of program, the city loses all control over it, even if the city wished to maintain control at kind of the outer edges of the program. And again, I don't want to talk about the facts of this case. I want to talk about sort of other cases. But a city couldn't do that and keep out the KKK flag. I disagree. I think it could. And and I think to a certain degree, this case, at least below, was litigated as a binary choice between government speech on the one hand and a designated public forum on the other. But I think that ignores the fact that this court has recognized there are limited forums or nonpublic forums in which content based and even speaker based restrictions on the use of governmental property for communicative purposes are acceptable as long as they're reasonably related to the purpose of the forum. And so that's why in our brief, we suggest that the city could still have this program while excluding things like the KKK flag. If the program is reserved for flags of countries from which Boston's community members originate or have ancestors. Right. I guess I was suggesting that that's that's a much more limited program than the one that I was positing, which is a program that's meant to say, you know, we want to hear from all different members of our community on the things that they care about, you know, not just like which country they're from so they can put up whatever flags they want to. But we're going to draw some lines. Essentially, you're saying they can't do that. I'm saying they can draw the lines based on content and based on even speaker status or identity. So, for example, nonprofits only or I think, Justice Kavanaugh, you mentioned Al Qaeda. No terrorist rule seems pretty reasonable to me. So that would probably pass muster, but they can't draw lines based on viewpoints. So if the program is such that, for example, a group could raise a Black Lives Matter flag, they probably would have to be able to raise a proud voice flag. I mean, that's just what the First Amendment demands, even in a non-public forum. Justice Gorsuch, Justice Kavanaugh, Justice Barrett. I just want to return to this control question in the clock that you had with Justice Alito. So the factors from our case are the history, the way an informed observer would perceive it, and the control. And it doesn't seem to me that either history or how an informed observer would perceive it necessarily suss out this question of whether the government is using it as a cover. So you said in figuring out if the government is using this as a cover for censorship, you know, we would be asking, is this more like a symposium? You know, where a diversity of views on a particular topic are solicited and welcome. Is that a subset of the control factor? I mean, none of our cases that I can think of are really getting at that question of sussing out government, just trying to put a stamp of approval on speech to weed out certain disavowed speeches, at least not Summum Walker and what was the other one? Oh, yeah, the trademark. So how do you suss it out? You know, I think it's ultimately going to be really fact bound. I guess I would point the court to Forbes, the Arkansas Educational Television Commission against Forbes. There, the court made clear that a public broadcaster who's exercising editorial control, a sort of curation of what programs to air, that's government speech. And the court said that expressly, even though the programs are created by third parties, the editorial control was government speech. But a candidate debate in particular was a nonpublic forum in which viewpoint discrimination was prohibited. And that's the kind of analysis. Unfortunately, it is fact found that has to be brought to bear in every case, you know, but but again, you have to look at the particular program. Imagine Summum, for example, those three factors that you discussed were discussed in Summum and pointed toward government speech. But imagine if the city of Pleasant Grove also simultaneously reserved the corner of that same park for a Monument of the Week program. I think the court might have had in which all comers could come and put their monument up for a week as long as it satisfied certain size criteria and then took it down and it was returned to them. I think the court might have had a different reaction to whether that piece of it was government speech. And that would be sort of regardless of whether a passerby would know that that corner was for the Monument of the Week or was for the permanent display. So returning to Justice Kagan's hypothetical about how such a program might be structured, would Justice Kagan's envisioned program work if to celebrate, you know, all of the commitments and ideals of various civic organizations? The city of Boston sits down, asks what's going to be expressed and says, yes, this is an idea that Boston can get behind. And a government official participates in the flag raising, participates in the ceremony, communicating that, yes, Boston is happy to celebrate and communicate pride in Juneteenth. But no, Boston is not going to participate in a flag raising for the Proud Boys. Is that a way to structure Justice Kagan's program? Absolutely. I think that would be government speech with that level of control, that level of planning and that initiation. I think that would be governmental speech. So the difference is the government involvement. It would be difficult to set up the parameters for, say, a limited public forum, as Justice Kagan was proposing. But if the government gets so involved in it that it's standing outside endorsing that speech, then it would be government speech. I think that's right. The difference between a symposium and an open mic night. Thank you, counsel. Mr. Hallward-Driemeier. Mr. Chief Justice, it may please the court. The sole issue here is whether the city's decision to lower Boston's flag from the City Hall flagpole and raise another in its place is the city's own speech. If so, then, as summum held, the city is free to select the views it wants to express. If, however, the flag raisings were private speech and the flagpole had become a public forum, then the city agrees that it cannot exclude petitioners' flag. Thus, whether the flag raisings were government or private speech is dispositive. The facts here are at least as supportive of the city as in summum, and petitioners' counterarguments rest upon a caricature of the actual events. First, summum held that exercising final approval authority constituted effective control. Petitioners stipulated at Pet App 149A that before, quote, final approval, any flag raising Commissioner Rooney, quote, must review whether the city's decision to raise a flag is consistent with the city's message, unquote. As in summum, there is no record of prior denials, but also no record of flag raisings inconsistent with the city's message. And unlike Walker, there are no purely private messages. Second, summum looked at to the general practice of governments erecting monuments. And similarly here, governments speak from government-owned flagpoles. That is what the observer would expect. Whereas Pleasant Grove made no express statement of its message, here the city has. It has a specific policy with respect to foreign flag raisings, and it has issued resolutions in connection with others. Third, as in summum, it would defeat the flagpole's essential function as the city's bully pulpit to treat it as a public forum. The city cannot effectively use its flagpole to communicate its own message if it must remain neutral and also carry the opposite message. Private parties are free to wave their flags on City Hall Plaza or even raise a temporary flagpole there, but they cannot commandeer the city's flagpole to send a message the city does not endorse. I welcome the court's questions. And I'm happy to address some of the questions that have been raised. Do I understand you to be saying that to some extent the city approves of every flag that flies? It has to confirm that raising a flag is consistent with the city's message. That's the stipulation. All right. Well, I don't know. There may be some dispute about it, but does the mayor of Boston really approve of the Montreal Canadiens? So the mayor of Boston made a bet with a fellow mayor and lost the bet and agreed to raise the Canadian flag. The Bruins flag would have had to rise in Montreal if the Bruins had won. What's critical here is that, of course, 90 percent, as Justice Breyer has mentioned, of the flags that are raised are foreign national flags. And it's not any individual flag that's the city's message. The city's statement of its goals is clear. It's the collective. It's the diversity. You now say that your policy is we'll put up the national flag of any group in the community that has roots in that country. Plus, we'll put up flags for city holidays. And then there are a few others that don't seem to fall into either of those categories. But was there any mention of this policy as you set it out in your brief until you filed your brief? Your Honor, that is the the those are the buckets that the flag raisings and that's what you've reverse engineered. But when you have explained what your policy was, it was nothing like that. There's nothing like that on the application. When you rejected the flagging question here, if I remember correctly, all that Mr. Rooney said was we will put up non-secular flags when he got the. And that was the advice that wasn't just something that he himself dreamed up. That was the advice he got from your law department. And then your rule number one of your seven rules. And I haven't been able to find the other rules is basically that we will put up flags that are we will we will not put put up flags that are inappropriate or discriminatory or religious flags from which one can infer will allow anything else. So, Your Honor, to be clear, the the city policy, which appears at Joint Appendix five, six, nine states that the city through its commissioner may allow raising the flags to commemorate an event or occasion. And that's that's one bucket that we've described these holidays or other similar events or occasions. Also, on the city's Web site, there is a statement of the goals of the flag raising program. And it says we commemorate we the city commemorate flags of many countries. We want to create an environment in which everyone feels included. We also want to raise awareness in Boston beyond about the many countries and cultures of the world. Our goal is to foster diversity by celebrating the communities within Boston. So so the foreign nation flag raising is described in the goals. It's on the city's Web site. The the policy states we do this in commemoration of events or occasions. And so the categories we've given are explicit there. And moreover, the rules are actually a subcategory. The policy incorporates the rules. And then under the rule, under the policy, the first rule is that we the city will not put up a flag that is discriminatory, offensive or that supports religion. It's that the city is going to stay silent, neutral with respect to religion. We're not going to support religion. Neither will we offer something that is derogatory of religion. And that's consistent with the principles of the establishment clause. Well, is that is it consistent with the principles of the free speech clause? If you say anybody can speak except we are going to. Monitor what is said and we're not going to allow religious speech and the court has said you can't do that and Rosenberger and other cases, plus we're not going to allow speech that is offensive. We've said that that's viewpoint discrimination in our two most recent cases that have a bearing on this. And the party stipulation makes clear that religious events are allowed in the public forum, in the city hall plaza, around the flagpoles that religious events are allowed. The city's own speech will not support a religion. So the first amendment, I understand that. But when you say anybody can speak by putting up a flag with these few exceptions, are you not creating a forum for private speech rather than speaking on speaking your own mind? No, Your Honor. I do believe that the fact that we're talking about the government's own flagpole in front of the government's seat of power, where governments have historically spoken. It's the government's fully pulpit. Everyone would think that is the government speaking. We're not taking anything from the public when the government says we will speak here in certain ways. One of the ways we, the city, speak there is to allow the flag raising of a foreign national flag to celebrate the diversity of the communities in Boston. It's not those governments. It's the community. Do you think the fact that it is a flagpole in front of city hall is dispositive? I think it is almost dispositive, Your Honor, because I do think that all observers would understand that that is the city speaking. Again, 90 percent of the time, the city of Boston flag there or more flies there next to the flags of the United States and the Commonwealth. The fact that occasionally and again, physically, the city must lower its own flag and provide the crank to allow another to go up in its place. The city maintains physical as well as regulatory control over the flag. What is the difference between that and a program that allows people to speak in front of city hall and say whatever they want, but not certain things that the city is going to rule out? I think that's government speech. No, Your Honor, it's not, because that's a traditional public forum. And I think that on your property, on right in front of city hall. Well, most public forums in property, you've designated it as a public forum, but let's say it's not it, but you allow it for that one purpose. I think most public properties, including in front of city hall, would be a public forum because that is where the citizens can protest their government. That is their right. And so in summum, what the court insisted on in terms of permanence, et cetera, was something was being removed from the public, taken from the public. Otherwise, this is part is public forum. Something's being taken away. Nothing's being taken away from the public when the city of Boston says we and only we will decide what we say from our flagpole. Counsel, could I just ask a question? Because I've wondered about this from the beginning of the case. I thought we were ruling on whether the First Circuit, on the basis of the summary judgment motion and the evidence before it, whether that policy was constitutional or not. But you've been arguing not the old policy, but the new one that changed during this litigation. What are we ruling on? Well, your honor, the parties stipulated that the written policy, which was written down in October of twenty eighteen, was the same as Boston understood the policy to be at the time. But what you understand and what you did are two different things. And assuming that I think there's a difference between the two. What am I ruling on? Well, your honor, I think the parties have stipulated that it's the same policy. We believe it was the same policy. The fact that Mr. Rooney cited the establishment clause, I think, is further evidence that he thought it was the city speaking because the establishment clause would only limit the city speaking. And so I think he can speak for himself on this point. But you're believing that we're ruling on the policy as it's written today, not the policy that we understand the summary judgment history related to. Correct. Well, because the party stipulated that the two were the same, I think that there's no difference between them, your honor. On the establishment clause point, it seems to me that maybe the root cause of this is some of the amicus briefs suggest is actually a mistaken view about the establishment clause, that when you have government property that's opened for a forum for speech or for use, there is a mistaken understanding that has existed that if you allow a bunch of secular groups and then allow a religious group to use it, that you violated the establishment clause. By doing that, it seems like we've had case after case after case that has tried to correct that misimpression of the establishment clause. And that seems to me what the root cause is here. I think the Beckett fund amicus brief is pretty helpful on that. I'd be curious of your thoughts about that. Your honor, I think that the establishment clause was cited by the city because the city did not want to be accused of having endorsed a religion. The proposal was to fly the Christian flag, but then the city thought that it was the city's own speech. And if the city, speaking for itself, was to say, we are flying the Christian flag, we, the city, are flying the Christian flag, not one that's had its religious intentions removed through the force of history, but one that is right out there. We are flying it as the Christian flag, that that might raise establishment clause concerns, I think, was legitimate. Isn't the answer to that what we've said repeatedly, which is equal treatment of religious groups vis-a-vis secular groups, religious speech, religious organizations, there's an open gym policy and a religious group wants to use it and they're excluded because they're religious. We've had cases like that. Isn't the answer to that to say equal treatment of religious groups or religious speech is not an establishment clause violation to reiterate that? It is absolutely clear that if this is a public forum of any type, any type, limited or general designated, the city does not maintain that it has a basis to exclude religious speech. And it's also clear that the city does not exclude religious groups from proposing to raise a flag. In fact, in connection with Constitution Day, the city said it was willing to raise a flag of Camp Constitution in celebration and recognition of Constitution Day. You're saying, Mr. Holwood-Driemeier, that we should recognize as government speech a program that basically now says, and previously, we welcome all comers except for the most reprehensible discriminatory speech and religious speech. That's what this program is. And why should we understand that to be government speech to say everything's good except religion? Your Honor, the suggestion that the policy ever said that flag raisings were open to all comers is a mischaracterization of the documents. There are documents that relate to seeking a permit to use the space at the flagpoles. That is a designated public forum. It is open to all comers. Well, if I understand your response, I don't mean to interrupt, but your argument to Justice Kagan seems to hinge on a factual premise. Is this flagpole, in fact, open to all comers, more or less? Is it a public forum? Once you, say, lose down that point, is your answer to Justice Kagan, you're right. We can't discriminate against religious movements and treat them as other offensive viewpoints. If the flagpoles had become a public forum, that was not our intent, but if by miscommunication the flagpoles were deemed a public forum, the city acknowledges it cannot exclude religious speech, it cannot exclude offensive speech or discriminatory speech from the flagpole because it has to be viewpoint neutral. Okay, and then let's just back up again, just now grant you your premise. In what case, what authority would you cite to support that the government can, in any circumstances, treat religious viewpoints the equivalent of offensive or inappropriate ones? They're not equal, Your Honor. They are just categories of speech that the city will not itself espouse. How is that not viewpoint discrimination under our case? Well, Your Honor, if it's the city itself speaking, then Summum said, and I'm quoting, the city is free, quote, to select the views it wants to express. So the city, for the city's own speech, can be viewpoint discriminatory. I don't think discriminatory is an odd word to use when describing a government's own speech. The government is simply fashioning its own message, and it has to be allowed to do that, or the democratic system breaks down, Your Honor. So that's why I say whether this was government speech or private speech is dispositive of the outcome here. You said that if you lose this case, you would restructure your program so that you would be able to exercise the kind of control to exclude religious flags, like the one that Camp Constitution wanted to fly. How would you propose doing that? Well, Your Honor, the United States has proposed what they view as a greater level of governmental involvement. I know. I read the SG's brief. But, I mean, what's the city's position? I mean, if the court clarifies that that type of involvement is required, the city is happy to include that in its program. I think that what we've described is that, in fact, apart from the foreign flags, that is a different sort of message that the city is sending, that the third-party flags were raised in connection with a city resolution or other recognized public observance. And so I would have no problem, I think the city would have no problem making that explicit in its policy. This is our speech. We will decide whether and when to do it. One could add the layer of requiring a city official to sponsor it to the city council to attend the event. Those are all available, and I think the city would be willing to make clearer, if necessary, that it is the city's speech. But Suman talked about not thinking of something as a public forum, if calling it a public forum would make it impossible, sort of defeat its essence, and effectively result in the removal of the forum. No city, Justice Kagan, I think you are exactly right, no city can run the risk of being forced to fly the swastika in front of City Hall. And so you cannot have a public forum at the City Hall. I wonder if you think I'm exactly right if I say the following. And this really does go back to Justice Kavanaugh's point. The reason I said, like, why wasn't this settled is because my guess is the same as his, is that this all came about because of a mistake by Mr. Rooney, and it's actually an understandable mistake. You know, we have a line in one of our opinions that says a City Hall can't have a cross on the roof. And so somebody looks at this, Mr. Rooney looks at this and says, isn't this kind of the same thing, and prohibits it. And in fact, it's not the same thing, because it's in a flagpole where different flags are coming up and going down all the time and expressing a wide variety of views and organizations and so forth. And so this was a mistake. And why is it that people have not been able to correct this mistake? Your Honor, the city would be very happy to discuss settlement, the city proposal. You know, I was not part of those discussions. I just know that they happened. I think that the suggestions for clarification, greater clarification that the policy is as we represent it to this court, that it is effectively flags of foreign nationalities and flags raising in connection with something that is a public holiday or something where the city has passed a resolution stating our support, we would be happy to clarify that policy in that way. What the city cannot afford is the idea that the flagpole has become a place where, to use Your Honor's hypothetical, the swastika flag, to use the example of Walker, the Confederate flag, ISIS, Al Qaeda, all of these could be flown. And it's not to say that the Christian flag is any of this. As a person of faith, that is not what we are saying. What we are saying is that the outcome in this case has to be the same whether this is the Christian flag, the Summum flag, the Confederate flag as in Walker, or the New York Yankees flag. The city is either compelled to raise all of them or none of them because it's the city's speech. The city feels that it must retain that control. It felt that it did have that control because the parameters were clear enough. From 2005 up to... It really wants to align itself with every national flag that members of the community want to fly, and yet you're willing to do that, right? Well, because, and this is why I think the goals as explicitly stated on the city's website are important because they say that it is to celebrate the diversity of the communities in Boston. It's not an inconsistency to put up the PRC flag and then put up the flag of Taiwan because Boston is not celebrating either of those governments. If someone in Boston wanted you to put up the North Korean flag, would you do that? I don't know what the current flag of Afghanistan is, but if it becomes the Taliban flag, would you fly that? If there was a community in Boston that sought to... They may be refugees from those countries. If they sought to raise a flag, the city would do so in honor of the community here and where they came from. That's the message that the city of Boston is saying. And the fact that the reasonable observer would think that this was the city speaking, Petitioner Shurtleff, the Massachusetts Brief, cites his own letter to the editor complaining about saying he's ashamed of Boston for having flown the PRC flag. Based on that, I went on the search. He published another letter more recently in which he says, call your counselor and tell them to stop this. He knows that it's the city. Do you think that every national flag that has religious symbolism has now been drained of its religious significance? It's not religious symbolism in the context of this flag raising policy, because the policy, and this is really made very clear, the city is flying the flag because it is the flag of Afghanistan. No, but I'm just getting at what the reasonable observer would think. I don't think that the reasonable observer would think because the Boston flagpole was flying the flag of Turkey that the city of Boston had declared itself Muslim. They would also know, if they know anything, that they're flying other nations' flags routinely throughout the year because if they went to the website, they would see. It's about celebrating the diversity of communities in Boston. Who can fly a flag? What exactly is your policy now? National flags, city holidays, anything else? Well, the policy says that it's raising flags to commemorate an event or occasion. That's the paragraph one of the city policy. Any event or occasion? Well, Your Honor, the city retains the control, and that's explicit. But this flag was for Constitution Day, right? Why wouldn't that count as an occasion? And the city said that they would fly a flag for Constitution Day, and they offered that if you had offered the Camp Constitution flag in honor of Constitution Day, that they would have flown it because the city is already supporting Constitution Day. The city would have flown that very same flag. If it had been presented as the Camp Constitution Day. Unfortunately, they admitted that there was some religious inspiration behind the flag, right? Well, they didn't say that there was religious inspiration behind the Camp Constitution flag. They didn't say it was the Camp Constitution flag. They said they wanted to fly the Christian flag. Yeah, but if it had been presented as a Constitution camp flag, it would have been approved. I believe you've said a couple of times. Yes. Okay. And so I want to get back to Justice Kagan and Justice Kavanaugh's point. Mr. Rooney apparently denied the request because he thought the Establishment Clause required him to do so. And if that's mistaken, and if we all agree that that's mistaken, and that was the basis on which the city's application decision was made, what's left to decide? Well, Your Honor, the city made clear that the city, for the city's own speech, was respectfully refraining from speaking on the subject of religion. That is absolutely consistent. As I understand it, Mr. Rooney said that he thought it was concerned about the so-called separation of state, a church and state, or the Constitution's Establishment Clause. And that's from the record. And if that's correct, and we all agree that that's a misunderstanding, forget about the future policies or whatever they may be. Why doesn't it resolve this case? It is not an inaccurate understanding of the Constitution to say that the concern about the separation of church and state leaves us, as the government, to be silent. Oh, I'm sorry. Assume a public forum, okay? Assume a public forum, and the record shows that the denial was made based on a misunderstanding of the Establishment Clause with respect to public forums. Why isn't that just the end of this case? Your Honor, if it's a public forum, the city acknowledges it has no basis to exclude. The Establishment Clause would not provide the basis to exclude a religious flag from a public forum. I want to be very clear. The city does not think so. The fact that he cited the Establishment Clause was because he believed it was the city's speech. And the Establishment Clause does apply to the government's own speech. I mean, one could add to what Justice Gorsuch just said. The fact that it was a public forum doesn't mean it's a public forum for all time in the future, right? The city can decide whether it wants something to remain a public forum. But if you look at the lack of control over this flagpole, it's hard not to think of it as a public forum. And then it's hard not to think that excluding religious speech from a public forum, and particularly excluding it because of this mistaken view. And, again, I want to say it's not a crazy mistake. You know, a city could not put a cross, in my view, on City Hall. But in the context of a system where flags go up, flags go down, different people have different kinds of flags, then it is a violation of the free speech part of the First Amendment and not an Establishment Clause violation. The end. I would like to take issue with the idea that there was no control. I mentioned the stipulation in which it was stipulated that he had to review it for whether the city's decision to fly the flag was consistent with the city's message. That was in Mr. Rooney's affidavit as well. And there was a deposition taken of Mr. Rooney. And one subject they never asked him about was, what do you do to make sure that it's consistent with the city's message? They never asked that question. And so it's stipulated at 149A that he would review to make sure that the city's decision to fly the flag was consistent with the city's message. Counsel, the problem you have with that answer is that the city's message was diversity of views and backgrounds. And, clearly, religion was one of them. You have no problem, and he had no problem, with raising flags that had religious symbols on it. You had no problem with having religious groups speak. His only problem was, as Justice Gorsuch pointed out, was this mistaken belief that the Constitution required that the city not raise a flag that had a cross by a religious group. That's a very different and substantially, I'm sorry, let me rephrase that, that belief is the one that Justice Gorsuch was challenging. Your Honor, I think that with respect to the foreign government flags, yes, it's diversity of the national origins of communities within the city. But that's a distinct thing. That's one message and it's reflected in the city's goals document that does, in a sense, require that diversity of those national origins. But with respect to the other aspects of the program, which were to celebrate events or occasions, doing it on public holidays or in connection with a city resolution, every other flag that they identify is connected with a city resolution. That's true of the EMS flag, the Mother's Day flag, the Bunker Hill, Juneteenth, Malcolm X, the renegades. Then they cite two flags in their reply for the first time in this litigation. Donate Life. There is a federal Donate Life month. The application, this is at JA398, refers to the fact that there is going to be state officials at the celebration of Donate Life. Of course, Donate Life is carried out through the Registry of Motor Vehicles and your driver's license. That was a public event. The Metro Credit Union, during Hispanic Heritage Month, the Metro Credit Union, which is a city community lending partner, said, we wish to fly the Juntos Avanzamos flag, together we advance, in celebration of the fact that that is the first financial institution recognized for its outreach to the Hispanic community. That, too, was a public event, Your Honor. They cite it at the last minute, and the document that discloses this is both the article that they cite in their brief and also a document produced in Discovery COB 6536. Your Honor, this record shows, as we have demonstrated, that if you take the national flags aside, there is about 10 other flags. And we have demonstrated that they were all in connection with something that had a city message, the celebration of a particular day, an observance, a remembrance. There is not ever a suggestion that the City Hall flagpole was open to all comers. Thank you, Your Honor. Thank you, Counsel. Justice Thomas? Mr. Hallward-Dremeier, just briefly, you mentioned diversity several times. And what I don't understand is your definition of diversity, because it would seem to me that Christians in Boston would be a part of that diversity calculus. The specific form of diversity that the city was trying to celebrate was national origin diversity, the references to countries throughout the world. Of course, there are other aspects of diversity. The city can choose to celebrate those aspects of diversity in many ways, and the city does celebrate religious events in other ways. There have been religious events that have happened on city property. The city chose not to start down the road of speaking on the subject of religion from the flagpole. Of course, had they started down that road, then the argument would have been that they had to carry all religious communications because they couldn't prefer one religious communication from the flagpole, or at least that would have been the argument. So it's limited diversity. They simply chose not to go there. It's limited diversity. They're celebrating a particular kind of diversity, national origin diversity, Your Honor. Justice Breyer? You mentioned the website, which had a good statement of the policy. Was that put up before or after this case began? The policy that was put up? No, I'm not saying about the policy. I'm saying was the website with the policy put up before or after? It was either before, after, or instantaneous. So there are just a couple different documents, and to clarify, the policy and the goals and the rules that are incorporated by the policy was adopted in October of 2018. The website that refers to the goals is not in the record at what time that was adopted. In the stipulation of facts, the parties have discussed it in the historic section, not with the new policy and rules, but the record is silent on that. Justice Alito? Justice Sotomayor? No, thank you. Justice Kagan? Justice Barrett? No. Thank you, counsel. Rebuttal, Mr. Staber? The record does reflect that at the time of 2017, the website was in effect. In fact, that's what Hal Shurtleff used, and the policies specifically written by the city for 2005 to 2017 include the statement that these are public forms open to all applicants, and that's the application that still is there, and it's still being used, and it's the same exact guidelines in 2017 as it is now. In 2019, in page 30 footnote of our brief, we indicate that during an interrogatory, the city confirmed that all the policies that were on the website in 2017 are still there, and they are still used. So in 2018, they adopted the policy that's in the joint appendix before the court of appeals, beginning at page 569 to 570. That particular policy does not limit subject matters or speakers. It says it's open for any event or occasion. Clearly, Camp Constitution celebrating Constitution Day and Citizenship Day was one of those occasions and or events. That same flag could have flown, but for a mistaken view of the establishment clause, and that establishment clause caused the ultimate problem. To justify that mistake, they argued that it was government speech, and they're bound to censor. But it's very clear that the same flag could have flown with the same exact symbol for the same one-hour event without any incident had Camp Constitution simply lied and said this is not the Christian flag, it's the Camp Constitution flag. They were actually encouraged to actually have a nonreligious flag or rename the flag. The reason why it was censored is solely because of the word Christian, and that is clearly viewpoint censorship. The question here is who was speaking. And by policy and practice, it's very clear. It's not the government. They didn't exercise control. They did ministerial review. They never requested the flag to be changed. They didn't own them. They didn't initiate them. In 2018, the policy says that any individual or organization may apply, and the only viewpoints that would be censored would be those that they deemed to be inappropriate, offensive in nature, or those supporting discrimination or prejudice or religious movements. Apparently, you could be anti-religious movement and be permitted. But what they clearly indicated is in 2018 what they had done in 2017, and that is it was an all-comers policy, no subject matters, no speakers, limited, but one particular viewpoint they are going to exclude, and that viewpoint happened to be a Christian or a religious viewpoint. They raised the establishment clause mistakenly to justify their decision. But this case cannot fall under government speech. The error of the First Circuit was to begin with the idea. I see that I'm out of time. Finish your. The error of the First Circuit, Mr. Chief Justice, was to begin with the notion that you can never have a flagpole forum. And then they crammed everything else into government speech, foregoing the traditional analysis of public forum doctrine. Thank you. Thank you, counsel. The case is submitted.